NICHOLAS ULRICH, WSBA No. 50006
Assistant Attorney General
Attorneys for Defendant
1116 W. Riverside, Suite 100
Spokane WA  99201
509-456-3123 - Telephone
Nicholas.ulrich@atg.wa.gov

**THE HONORABLE SALVADOR MENDOZA, JR.**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JANE DOE,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>ELSON S. FLOYD COLLEGE OF MEDICINE AT WASHINGTON STATE UNIVERSITY,<br><br>　　　　　　　　Defendant. | NO. 2:20-cv-00145-SMJ<br><br>DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

## I.　　INTRODUCTION

Ms. Doe seeks special treatment.  She wants this Court to enjoin the Medical School from enforcing its own policies regarding timing to complete its medical degree program. Courts, however, will not interfere with a university's exercise of professional judgment in academic decision-making.

## II.　　STATEMENT OF MATERIAL FACTS

Ms. Doe was a part of the inaugural cohort of students at Washington State University's new Elson S. Floyd College of Medicine (ESFCOM or the College).

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA  99201-1106
(509) 456-3123

Dec. of D. DeWitt at 4. Unfortunately, Ms. Doe's time in ESFCOM resulted in numerous complaints against her for unprofessionalism and bullying.

Because ESFCOM is training future doctors, it is important for students not merely to learn the *skills* to be a doctor, but also the proper professional behavior. *Id.* For these reasons, ESFCOM incorporates professionalism into its academic programing. *Id.* at 2. After a certain number of incidents of unprofessionalism, or if there is extreme conduct, the issues are referred to the Student Evaluation, Promotion, and Awards Committee or SEPAC, which has ultimate authority over whether students advance in ESFCOM. Dec. of D. DeWitt at 3.

The SEPAC can take a number of actions in response to professionalism concerns, from a letter of concern with recommendations, to academic probation with requirements, to dismissal from the program. *See* Dec. of D. DeWitt, Ex. A.

Ms. Doe first came to the attention of the SEPAC in the spring of 2018. Dec. of D. DeWitt at 4. She had been reported for several professionalism concerns. *Id.* at 4-5. The SEPAC ultimately reviewed the incidents as well as her response and determined that a letter of concern was warranted. *Id.*

Ms. Doe came to the attention of the SEPAC again in November of 2018 for gross unprofessionalism toward other students. Prior to her second year of school, Ms. Doe had been dating another student, AF. *See id.* at 6. Ms. Doe and AF broke up. *Id.* AF then began seeing another student of the College, CE. *Id.*

In November of 2018, AF submitted a card, alleging that Ms. Doe had been bullying him using ESFCOM's SLACK communication channel.

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

2

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

Dec. of L. Burch Windrem at 4. SLACK is a school communication platform that allows direct messages between students, faculty and staff. *Id.*; Dec. of D. DeWitt at 7. AF included an excerpt of the communications with his complaint and attached a screenshot. *Id.* at 6-7 & Ex. E.

CE also submitted an incident card. *Id.* at 6. CE's relayed that Ms. Doe had been unprofessional in an interaction prior to a clinical exam setting. *Id.* Specifically, Ms. Doe mouthed "fuck you – fuck you" to CE prior to the latter commencing the exam. *Id.*

The SEPAC met to review these concerns in November of 2018. Dec. of D. DeWitt at 7. Given that the College's SLACK channels were used for some of the communications and the harassing nature of the communications, the SEPAC voted to place Ms. Doe on academic probation. *Id.* at 7-8.

In December of 2018, there was another interaction between AF and Ms. Doe. *See* Dec. of L. Burch-Windrem, Ex. C. This Ms. Doe approached AF to talk to him about a ski trip, which was *not* a school-sanctioned event. Dec. of D. DeWitt at 9. After speaking with AF, Ms. Doe emailed Ms. Burch-Windrem to complain that AF had recorded her "without [her] knowledge." Dec. of L. Burch-Windrem, Ex. C at 2. Ms. Burch-Windrem scheduled a meeting with Ms. Doe and immediately advised her of resources, including contacting the campus conduct officer. Dec. of L. Burch-Windrem at 7. Ms. Doe indicated that she did not "want to press charges or file a conduct report." *Id.*, Ex. C at 1.

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

3

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

At the same time, Ms. Doe wanted clarification on what professionalism boundaries she should have with AF and CE. Dec. of L. Burch-Windrem at 7. Dr. DeWitt called Ms. Doe and informed her that she should have no further contact with AF and CE. Dec. of D. DeWitt at 10. Ms. Doe acknowledged this no-contact requirement on several occasions, including in an email to Ms. Burch-Windrem in January of 2019 and in her response to the professionalism concerns in March of 2019. Dec. of L. Burch-Windrem at 8 & Ex. D (indicating she will "maintain no contact with him"); Dec. of D. DeWitt at 11-2 & Ex. J (acknowledging the "verbal agreement to maintain 'no contact'" with CE and AF).

Despite the admonition that she not contact AF, Ms. Doe contacted AF in an effort to "apologize" in winter of 2019. AF and CE filed incident cards in February. *See id.* at 8. AF complained that Ms. Doe continued to contact him in a harassing manner and attached a screenshot of an unwanted communication from Ms. Doe. *Id.*; Dec. of D. DeWitt at 11 & Ex. I. CE complained that Ms. Doe was spreading malicious rumors about her regarding her sex life, relationships, and drinking habits. Dec. of D. DeWitt at 10 & Ex. H.

The SEPAC convened and asked Ms. Doe to appear before it to address her unprofessional behavior. *Id.* at 11. The SEPAC investigated, considered Ms. Doe's response, and ultimately determined that Ms. Doe was in violation of her academic probation by continuing to engage in unprofessional behavior. *Id.* at 12. Rather than dismiss her outright from medical school, it determined to place her on administrative leave and request a fitness to practice letter prior to her return. *Id.*

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

4

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

Ms. Doe was allowed to remain in classes pending her appeal. Ms. Doe appealed to the Dean of the Medical School and to the Dean of the Graduate School, both of whom denied her appeals. Dec. of Tomkowiak at 2; ECF No. 6-5.

In spring term 2019, Ms. Doe failed three mastery exams. Dec. of D. DeWitt at 13. After these three failures, the SEPAC determined that she had failed the course FMS 513 and required her to repeat FMS 513. *Id.*

In order for Ms. Doe to return to FMS 513 in the spring of 2020, she was required to submit her required materials ten days prior to the start of the term. *Id.* at 14. She did not do this. *Id.* Instead, she gave notice of her intent to return after the term had started, and one day before classes were to start. *Id.* at 15. The SEPAC elected to consider her materials anyway, and convened an emergency meeting to do so. *Id.* Ultimately, the SEPAC found her materials deficient and denied her return to classes. *Id.* Her mandated academic leave had ended, however, so the SEPAC advised her of the possibility to take personal leave. *Id.* In suggesting the possibility, for personal leave, the SEPAC noted that she might be required to repeat year two because of curriculum changes. *Id.*

Ms. Doe applied for personal leave. *Id.* The SEPAC granted her request for personal leave but mandated that she return to repeat FMS 511, FMS 512 in addition to FMS 513. *Id.* This was because of substantial curriculum changes that occurred between her inaugural class and the class of 2023. *Id.* at 16. Given the policy that students must complete the Academic program in a total of six years, the SEPAC mandated Ms. Doe return in August of 2020. *Id.* at 16-17.

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

5

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

1  Ms. Doe now seeks a preliminary injunction to prevent ESFCOM from
2  withdrawing her if she again fails to comply with the requirements for her return.

### III. ARGUMENT

Ms. Doe is requesting an exception to the College's policy that a medical student must complete the program within six years. Given the deference that the Court must afford medical schools in making academic determinations, Ms. Doe cannot show a likelihood of success on the merits.

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of the equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiff bears the burden to establish all four prongs of the test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). A preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993).

**A.  Ms. Doe cannot show a reasonable likelihood of success on the merits.**

The College's six-year completion requirement requires Ms. Doe to resume her studies in August of 2020. *See* Dec. of D. DeWitt at 17. The court should not carve out an exception.

The policy has two significant purposes. Frist, as Dr. DeWitt explains, the policy minimizes the risk that a student will forget material for being away from

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

6

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

the program; medical learning builds on itself. Dec. of D. DeWitt at 17. Additionally, students who take extensive leave may miss critical new information, given the rapidly changing medical environment. *See id.* Second, as Dean Tomkowiak explains, the policy also speaks to a financial risk borne by the student. Dec. of Tomkowiak at 4. Thus, where a student is struggling in the program there is a risk that they may not graduate, and are continuing to accrue debt with a diminishing likelihood of obtaining the ultimate degree. *See id.*

Thus, regardless of whether it is the academic concern or the financial, ESFCOM has good reason for its policy, and the Court should not interfere.

Additionally, where the decision is consistent with academic norms and based on the exercise of professional judgment, courts cannot interfere with the academic decision makers. This case is akin to *Regents of University of Michigan v. Ewing*, 474 U.S. 212 (1985). There, Ewing was dismissed from the University of Michigan Medical School after failing an exam. He brought a challenge against the university on due process grounds. *Id.* Importantly, in this academic context, the Court held that significant deference should be given to the academic decision makers:

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is *such a substantial departure from accepted academic norms* as to demonstrate that the person or committee responsible *did not actually exercise professional judgment*.

*Ewing*, 474 U.S. at 225 (footnote omitted) (emphasis added). Ultimately, the court found the University's decision was "made conscientiously and with careful deliberation, based on an evaluation of the entirety of Ewing's academic career." *Id.* at 225.

Here, the College likewise did not depart from accepted academic norms, nor did it fail to exercise professional judgment. The College engaged in a deliberative and thorough process. Ms. Doe's unprofessional behavior escalated from minor matters involving unprofessionalism, to aggressive language and harassment of colleagues, to a complete failure to follow professional requirements put in place by the SEPAC. The SEPAC began with a mere letter of concern, escalated to academic probation, and finally ended with academic leave and specific conditions for returning. While the SEPAC would have been within its policy to dismiss Ms. Doe, it gave her the ability to return if she complied with necessary conditions.

These conditions including the fitness to practice letter have an academic basis. As Dean Tomkowiak explains, the letter "is a common tool used in medical schools across the country." Dec. of J. Tomkowiak at 3. Working on obtaining a letter is actually beneficial for the student because it can help them find an "underlying cause for their behavior" and "improve [their] situation." *Id.* In short, ESFCOM's actions have been consistent with academic norms, so the Court should not interfere with the SEPAC's professional judgment.

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

8

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

**B. Ms. Doe cannot show irreparable harm because she brought about her situation.**

Ms. Doe has not met her burden to establish irreparable harm. Where harm is self-inflicted party may not satisfy irreparable harm requirement. § 2948.1 Grounds for Granting or Denying a Preliminary Injunction—Irreparable Harm, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.). Here, any harm she will suffer is self-inflicted. Ms. Doe made choices and took actions that were unprofessional and ultimately led to her academic probation and academic leave with conditions for her return. Ms. Doe's complete failure to abide by the conditions to return is of her own making; it cannot *now* be grounds for establishing irreparable harm.

**C. Neither the balance of equities nor the public interest supports an injunction here.**

It would not be equitable to grant Ms. Doe an exception to ESFCOM's policies, which all other students must follow. Additionally, the public's interest is in the College following its policies in a consistent manner for all of its students. ESFCOM's policies on professionalism are designed to protect the public, as members of the public are the future patients of today's medical students. *See* Dec. of D. DeWitt at 2-3. Exceptions to the policy are exceptions to this purpose.

## IV. CONCLUSION

Ms. Doe seeks an exception to ESFCOM's policies on completing her medical training in six years. Given the deference that the Court must afford the

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

9

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

College, the Court should not find a likelihood of success on the merits. The Court should deny the injunction.

DATED this 30th day of June, 2020.

ROBERT W. FERGUSON
Attorney General

   s/Nicholas Ulrich
NICHOLAS R. ULRICH, WSBA No. 50006
Assistant Attorney General
Attorneys for Defendant
1116 W. Riverside, Suite 100
Spokane WA 99201
509-456-3123 - Telephone
Nicholas.ulrich@atg.wa.gov

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

10

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

**DECLARATION OF SERVICE**

I certify that I electronically filed and served a copy of this document using the CM/ECF filing system to the following:

> Sarah L. Freedman, P.S.
> 1312 N Monroe St, Ste 127
> Spokane, WA 99201
> sarahfreedmanlaw@gmail.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 30th day of June, 2020, at Spokane, Washington.

    s/Nicholas Ulrich
NICHOLAS ULRICH, WSBA No. 50006
Assistant Attorney General
Attorneys for Defendant
1116 W. Riverside, Suite 100
Spokane WA 99201
509-456-3123 - Telephone
Nicholas.ulrich@atg.wa.gov

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

11

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123