FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 17, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JANE DOE,<br><br>               Plaintiff,<br><br>     v.<br><br>ELSON S FLOYD COLLEGE OF MEDICINE AT WASHINGTON STATE UNIVERSITY,<br><br>               Defendant. | No.   2:20-cv-00145-SMJ<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

On July 14, 2020, the Court heard oral argument on Plaintiff Jane Doe's Motion for Preliminary Injunction, ECF No. 6, and Amended Motion for Preliminary Injunction,[1] ECF No. 7. Also before the Court, without oral argument, is Defendant's Motion to Extend Deadline to File Response, ECF No. 17. Plaintiff seeks to enjoin Defendant Elson S. Floyd College of Medicine at Washington State University from academically withdrawing her from her studies as a medical

---

[1] Plaintiff's Amended Motion for Preliminary Injunction does not amend the original motion itself, but rather adds two additional declarations. *Compare* ECF No. 6 *with* ECF No. 7. However, the Amended Motion for Preliminary Injunction omits the exhibits that were attached to the original motion. *Compare* ECF No. 6 *with* ECF No. 7. The Court has therefore read the original motion and the amended motion together as one motion with all attachments.

ORDER GRANTING PRELIMINARY INJUNCTION – 1

student. Defendant opposes the requested preliminary injunction. ECF No. 10. Having reviewed the motions and the file in this matter, the Court is fully informed and enjoins Defendant from academically withdrawing Plaintiff pending the resolution of this action.

## BACKGROUND

Plaintiff brought suit in the Spokane County Superior Court against Defendant on January 31, 2020. ECF No. 2-2. She asserted twenty causes of action, including six alleged due process violations, two violations of her right to privacy, harassment, seven gender discrimination claims, three disability-rights violations, and the tort of outrage. *Id*. Defendant removed the action to this Court on April 8, 2020. ECF No. 2.

Plaintiff asserts she enrolled in Defendant's medical school in August 2017 as part of the inaugural class. ECF No. 2-2 at 3–4. Plaintiff avers that during her studies, she began dating a fellow student, AF, and that the relationship ended when it became abusive. *Id.* at 4. After the relationship ended, AF became romantically involved with another student, CE, one of Plaintiff's close friends. *Id.* Plaintiff alleges that after AF began dating her friend, she "confronted him about his indiscretions" and AF "screamed, swore, and flipped a coffee table at her." *Id.* Plaintiff asserts she informed university staff of the abuse, but her concerns were not taken seriously. *Id.*

Separately, Plaintiff asserts she suffers from depression and PTSD, which are related to "an incredibly traumatic event" she witnessed while in Kenya on an academic research trip. *Id.* She allegedly informed Assistant Director Lisa Burch-Windrem, Defendant's employee, of her disabilities at the beginning of her 2018 academic year. *Id.* Plaintiff asserts she later informed Burch-Windrem of AF's abusive behavior, and that Burch-Windrem failed to provide her with resource for abuse victims or any safety plan. *Id.* at 5. Burch-Windrem has submitted a declaration contradicting these assertions. ECF No. 11.

Defendant asserts that beginning in Plaintiff's first year, Defendant received multiple complaints against Plaintiff for unprofessionalism and bullying, including multiple complaints prior to the events involving AF and CE. ECF No. 10 at 2. However, Plaintiff first came to the attention of the Student Evaluation, Promotion, and Awards Committee (SEPAC), the entity that brought sanctions against Plaintiff, in the fall of 2018 regarding her allegedly unprofessional conduct. *Id.*

Plaintiff alleges that during this time, AF and CE began fabricating allegations against Plaintiff, and that these allegations were taken seriously despite Plaintiff having previously reported the AF's abuse. ECF No. 2-2 at 5. AF reported Plaintiff for harassing him over Defendant's messaging platform, Slack, conduct which Plaintiff represents was her attempt to ask him to leave her alone. *Id.* She asserts that after AF reported this communication, the university sanctioned her for

a lack of professionalism, but that she had received no explanation, guidelines, or definition of professionalism. *Id.* at 7. Defendant asserts Plaintiff was placed on academic probation after a review of Plaintiff's Slack communications with AF, which the university found to be harassing, and as a result of a separate incident in which Plaintiff reportedly mouthed "fuck you" repeatedly to CE prior to an exam. ECF No. 10 at 3.

Plaintiff asserts she raised concerns with Burch-Windrem and Dr. Dawn DeWitt that AF had recruited students to follow her and report back to him, but that they dismissed her allegations without investigation. ECF No. 2-2 at 8. She also alleges she was sanctioned for violating a no-contact order, but that she had never signed a no-contact order, and that the university refused to assign her to a new "small group" when she had been placed in a small group that included CE. *Id.* at 9. At one point, Plaintiff allegedly contacted AF to ask him not to attend a student-planned ski trip and she asserts he recorded the conversation without her consent. *Id.* at 11. Plaintiff reported the allegedly unlawful recording to Student Affairs, but no action was taken. *Id.* Defendant indicates that after the events surrounding the ski trip, DeWitt called Plaintiff and told her to have no further contact with AF and CE, and that Plaintiff acknowledged this prohibition on several occasions. ECF No. 10 at 4. Defendant also attached a screenshot of a conversation between Plaintiff and AF in which Plaintiff says she agreed to be recorded during the meeting

with AF, but that she intended for her statement to be sarcastic. ECF No. 11-5.

Plaintiff also alleges she was not provided with sufficient evidence to defend herself against allegations brought against her by CE. ECF No. 2-2 at 13. She asserts three of the five voting members of SEPAC were required to recuse themselves because they, respectively, (1) supervised CE's cohort, (2) served as a leader for the Art and Practice of Medicine small group in which AF was a member, and (3) served as the faculty leader for a student organization for which AF and CE were founding members and accompanied the two on a university-endorsed conference trip. *Id.* at 14. She also asserts a fourth, non-voting SEPAC member served improperly as a both an advocate for Plaintiff and a non-voting SEPA member. *Id.* at 16.

Plaintiff asserts the appeals process from the SEPAC sanctions took four months and was highly stressful, resulting in her failing two exams. *Id.* at 17. She asserts she was not given the opportunity to remediate[2] the exam twice, despite this being university policy. *Id.* She also asserts Defendant's Office of Student Affairs, one hour before her exam, sent her an email about a required meeting later that day

---

[2] The parties frequently use the term "remediate," but neither explicitly defines the term. *See* ECF Nos. 6, 10. However, the "Medical Student Promotion, Dismissal, and Graduation" policy attached to Defendant's response defines the term as "An academic activity to remove a deficiency as determined by the SEPAC after consideration of a clerkship or course director recommendation, an assessment of a student's overall academic performance, a student's written request or other factors deemed relevant." ECF No. 13-1 at 2.

ORDER GRANTING PRELIMINARY INJUNCTION – 5

intentionally, so that she would become too anxious to pass the examination. *Id.* at 18.

Defendant indicates SEPAC convened again after AF and CE reported Plaintiff continued to harass them, including by contacting and harassing AF when he asked Plaintiff not to contact him and by spreading malicious rumors about CE's sex life, relationships, and drinking. ECF No. 10 at 4. Defendant has attached screenshots of Plaintiff's communications with AF and of CE's complaint against Plaintiff. ECF Nos. 13-8, 13-9. As a result of these new allegations, Plaintiff was found to be in violation of her academic probation and was then placed on administrative leave but was allowed to remain in classes pending her appeal. *Id.* at 4–5.

Plaintiff then failed three exams and was required to repeat one course. *Id.* Plaintiff was required to file materials prior to the start of the upcoming term to re-enroll, but that she failed to submit the documents in a timely manner and was failed to file all required documents. *Id.* at 5. Because her academic leave had ended, Plaintiff elected to take personal leave, but was instructed she would be required to re-enroll in August 2020 and would need to repeat three courses because of substantial curriculum changes. *Id.*

Plaintiff also alleges that she and her counsel asked the University to stop sending her emails, but that Defendant continued to send her emails about courses

and other matters. *Id.* at 19. Finally, Plaintiff alleges that after she filed a tort claim with Defendant's office of risk management, Burch-Windrem removed her from a group within Slack (a "Slack channel") in such a manner that other students were notified that she had been removed. *Id.* at 20.

## LEGAL STANDARD

To obtain a preliminary injunction, a plaintiff must generally establish four things: (1) likelihood of success on the merits, (2) that irreparable harm is likely if preliminary relief is denied, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the Ninth Circuit, when the balance of equities tips "sharply" in the plaintiff's favor, preliminary injunctive relief is appropriate if there are "serious questions going to the merits," even if the plaintiff cannot necessarily establish a likelihood of success. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

There are two kinds of preliminary injunction: mandatory and prohibitory. *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014). A mandatory injunction, which "orders a responsible party to take action," is generally disfavored and requires a heightened showing of need by the plaintiff. *Id.* (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009)). By contrast, a prohibitory injunction "prohibits a party from taking

action and preserves the status quo pending a determination of the action on the merits." *Id.* "'Status quo' refers to the legally relevant relationship *between the parties* before the controversy arose." *Id.* (quoting *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012)).

## DISCUSSION

**A.    Defendant's Motion to Extend Deadline to File Response is Granted**

In her reply, Plaintiff argues Defendant's response was untimely and should therefore be "considered waived." ECF No. 16 at 3. Defendant's response was filed one day after the deadline to file a response. *See* ECF No. 10. After the reply was filed, Defendant filed a Motion to Extend Deadline to File Response, ECF No. 17.

Where a party seeks to extend a deadline that has passed, it must show "excusable neglect." Fed R. Civ. P. 6(b)(1)(B). The Court's inquiry in such cases considers "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997)).

Defendant indicates its one-day delay was due to confusion over the filing of Plaintiff's amended motion and due to a miscalculation for which Defendant's

counsel takes responsibility. ECF No. 17 at 2. Defendant also attached an email from Plaintiff's counsel on June 17, 2020 indicating counsel's consent to a response filed two weeks from that date. ECF No. 18-1. Plaintiff successfully submitted a reply one week after the response, well in advance of the hearing on Plaintiff's Motion for Preliminary Injunction. *See* ECF No. 16. As such, Plaintiff has not been prejudiced by the delay, which was short in duration. Although Plaintiff argues she would be prejudiced if the hearing on her Motion for Preliminary Injunction were delayed, no such delay occurred—the motion was heard on the day and time originally noted in her motion. *See* ECF No. 6.

As such, the Court finds Defendant has shown excusable neglect for its untimely filing and the Motion to Extend Deadline to File Response is granted. The Court has considered Defendant's late-filed response in evaluating Plaintiff's motions for preliminary injunction. However, the parties are reminded to exercise care in complying with deadlines set by the Local Civil Rules and this Court's Orders. The parties are also reminded that deadlines can only be changed by order of the Court.

**B.    Plaintiff Seeks Prohibitory Relief**

As an initial matter, it was unclear from the briefing what form of relief Plaintiff was seeking. Plaintiff variously indicates she is seeking an injunction "to estop Defendant from administratively withdrawing her from her educational

environment," or an order that Defendant "not be permitted to expel Doe" while discovery is conducted as to the changes in course curriculum that form the basis for requiring her to repeat her second year. ECF No. 6 at 3, 14. Defendant argued that Plaintiff also sought to be excepted from Defendant's requirement that medical students complete their coursework within six years. ECF No. 10 at 6. Plaintiff clarified at the hearing that she is not seeking an exception to this or any other requirements of her program. Rather, she is seeking only to enjoin Defendant from academically withdrawing her until the case is resolved on the merits. Plaintiff is—and was at the time at which this dispute arose—on leave, whether academic or personal, and had not been withdrawn. As such, Plaintiff is seeking to maintain the status quo between the parties.

Defendant argued that Plaintiff is seeking to be excepted from Defendant's academic requirements. ECF No. 10 at 6–8. However, Plaintiff acknowledged at the hearing that if she is ultimately unsuccessful on the merits of her claims and would be required to repeat her second year, then she would address the matter of the six-year completion requirement at that time. As such, the injunction Plaintiff seeks merely prohibits Defendant university from academically withdrawing her at this time and does not seek an exception to Defendant's academic requirements. Because the injunction would prohibit Defendant from taking action, it preserves the existing legal relationship between the parties and is a prohibitory injunction not

subject to a heightened standard. *See Brewer*, 757 F.3d at 1061 (finding prohibitory injunction not subject to heightened burden of proof).

## C.    Plaintiff is Entitled to a Preliminary Injunction

To prevail on her Motion for Preliminary Injunction, Plaintiff must show either a likelihood of success on the merits or a "serious question" going to the merits, that irreparable harm is likely if the relief is denied, that the balance of equities tips in her favor, and that an injunction is in the public interest. *See Winter*, 555 U.S. at 20.

### 1.    The equities tip sharply in Plaintiff's favor

The Court begins with the balance of equities because the outcome of this factor affects the standard that will apply when evaluating the merits of Plaintiff's claims at this stage. *See All. for the Wild Rockies*, 632 F.3d at 1135. Plaintiff has shown that the balance of the equities tips sharply in her favor. Plaintiff argues that an academic withdrawal would effectively end her medical career before it begins. ECF No. 6 at 12. Plaintiff elaborated at the hearing that even if she were ultimately successful on the merits and obtained an injunction requiring Defendant university to re-enroll her as a medical student, the academic withdrawal would remain on her record and negatively impact her candidacy for residencies.

Defendant's sole argument on this issue is that it would not be equitable to grant Plaintiff an exception to Defendant's policies. ECF No. 10 at 9. However, as

discussed above, Plaintiff is not seeking an exception to Defendant's policies at this time. Defendant's policies will be applied to Plaintiff when the merits of her case have been resolved. As such, any injury to Defendant from the delay in applying these policies is minor when weighed against the negative ramifications on Plaintiff's career if the injunction is not granted and Plaintiff is ultimately successful on her claims. Thus, the balance of the equities tips sharply in Plaintiff's favor.

### 2.    Plaintiff has shown serious questions going to the merits

Plaintiff has shown serious questions going to the merits of her due process and disability rights claims. Because the balance of the equities tips sharply in Plaintiff's favor, Plaintiff must merely meet this lower standard of "serious questions going to the merits" on any of its twenty claims. *See All. for the Wild Rockies*, 632 F.3d at 1135. By and large, Plaintiff's briefing fails to meet her burden because she does not cite to specific case law or evidence in support of her arguments. *See Short v. Brown*, Case No. 2:18–cv–00421–TLN–KJN, 2018 WL 1941762, at *10 (E.D. Cal. Apr. 25, 2018) ("It is not this Court's role to spin out arguments . . . that Plaintiffs have not made."), *aff'd*, 893 F.3d 671, 2018 WL 3077070 (9th Cir. June 22, 2018); *Dunn v. Codikow*, 2013 WL 12089494, at *2 (C.D. Cal. Oct. 21, 2013) (finding allegation that contract was fraudulent and void, "without any citation to relevant case law or evidence, falls well short of meeting [the] burden to establish a substantial likelihood of success on the merits").

However, Plaintiff has presented sufficient evidence to show serious questions going to the merits of her due process and disability rights claims.

### i.    Due Process

Plaintiff asserts her due process rights were violated in three ways: (1) that she was not provided with details of what she was accused of at an April 23, 2019 meeting with Dean Tomkowiak, (2) that she was not given an opportunity to raise concerns about allegedly biased members of SEPAC, and (3) that the allegedly biased members of SEPAC were required to remove themselves from considering the claims related to Plaintiff, AF, and CE. ECF No. 6 at 6–8.

"A procedural due process claim has two elements: deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection." *Krainski v. Nevada ex rel. Bd. of Regents of the Nev. Sys. of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010) (citing *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)). University students facing dismissal or disciplinary sanctions are entitled to some degree of process. *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 89–90 (1978) ("[D]ue process requires, in connection with the suspension of a student from public school for disciplinary reasons, 'that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.'" (quoting *Goss*

*v. Lopez,* 419 U.S. 565, 581 (1975))).

As to the first alleged violation of Plaintiff's due process rights—that she was not provided with details of what she was accused of at an April 23, 2019 meeting with Dean Tomkowiak—Plaintiff has not indicated what information she was provided or why that information was inadequate. *See* ECF No. 6 at 6. It appears this is in part due to her belief that she is still missing information about the specific accusations against her. *See id.* ("[I]nformation has still not been provided to [Plaintiff,] leaving her unclear about what specifically she is being punished for having allegedly done."). However, this brief and conclusory assertion is simply insufficient to show a serious question going to the merits of her claim.

As to the second claim, that Plaintiff was not provided with an opportunity to raise concerns about SEPAC member's biases, she has not indicated how her right to object was infringed. Washington Administrative Code § 504-26-125 indicates that "[a] party requesting recusal of a conduct officer or conduct/appeals board member must demonstrate good cause. The request must be made in writing no later than five calendar days prior to the date of the conduct hearing or appeals board meeting." The Complaint alleges Plaintiff was not given notice of the hearing ten calendar days in advance. ECF No. 2-2 at 24–25. However, Plaintiff does not elaborate on when she received the notice, explain why she was unable to make a timely recusal request, or describe how Defendant's actions otherwise denied her

ORDER GRANTING PRELIMINARY INJUNCTION – 14

this right. *See* ECF No. 6 at 7. As such, Plaintiff has not shown serious questions going to the merits of this claim.

Finally, Plaintiff asserts four SEPAC members were required to recuse themselves. "Conduct officers and board members must recuse themselves if, after consultation, an actual conflict is determined to exist." Wash. Admin. Code § 504-26-125(4). "[A] conflict of interest is defined as a personal interest, financial, familial, or otherwise, that might impair, or reasonably appear to an objective, outside observer to impair, a person's independent unbiased judgment in the discharge of their official responsibilities." *Id.* Here, Plaintiff asserts (1) "Dawn Dewitt has a close teaching and mentoring relationship with [AF]," (2) "Daniel Teraguchi acted as a gatekeeper for the concerns anyone had in relation to Doe, and thus was acting as both witness and judge, which creates a conflict," (3) "Jennifer Troiano has a close teaching and mentoring relationship with [AF]," and (4) "Carlton Heine is good friends with Doe's abuser and his new girlfriend and frequently socialized with them outside of the educational environment, including imbibing to the point of excess at conferences. He also spent substantial time mountain biking and skiing with them." ECF No. 6 at 7–8.

The claims against Teraguchi appear to be a challenge to the procedures that allow him to both "act as a gatekeeper" and also serve on SEPAC. *See* ECF No. 6 at 7. However, at this stage, it appears to be a question of fact whether Teraguchi,

Dewitt, Troiano, and Heine's relationships with the students involved in the events

SEPAC was meeting to review amounted to a personal interest "that might impair,

or reasonably appear to an objective, outside observer to impair, a person's

independent unbiased judgment in the discharge of their official responsibilities."

Wash. Admin. Code § 504-26-125(4). Thus, Plaintiff has shown serious questions

going to the merits of whether these SEPAC members' failure to recuse themselves

violated her due process rights.

### ii.    Family Educational and Privacy Rights

Plaintiff asserts her public removal from a Slack channel violated her privacy

rights under the Family Educational Rights and Privacy Act (FERPA) and Wash.

Rev. Code § 504-21-050(1). ECF No. 6 at 8. FERPA "prohibits federal funding of

educational institutions that have a policy or practice of releasing education records

to unauthorized persons." *Gonzaga Univ., v. Doe*, 536 U.S. 273, 276 (2002).

However, FERPA does not create a private right of action to enforce violations of

its nondisclosure provisions. *Id.* at 290. Thus, Plaintiff cannot show a likelihood of

success for Defendant's alleged violation of FERPA.

Under Wash. Rev. Code § 504-21-050(1), Washington State University is

prohibited from releasing education records or a student's personally identifiable

information other than directory information without the student's written consent.

Wash. Rev. Code § 504-21-050(1). "Directory information" includes the student's

"major and minor fields of study . . . dates of attendance, enrollment status (e.g., undergraduate or graduate; full-time or part-time), grade level, [and] degrees . . ." Wash. Rev. Code § 504-21-050(5). Plaintiff fails to explain how removing her from a Slack channel was a "release" of her education records or personal information and does she cite any case law that would support such a conclusion. As such, she has not shown a serious question going to the merits of this claim.

### iii.    Harassment

Plaintiff argues Defendants have engaged in harassment by continuing to send her "inane and incessant contact via email" indicates Defendant engaged in harassment. ECF No. 6 at 9. Plaintiff asserts the "ongoing barrage of contact by the individuals ultimately named in the suit furthered [Plaintiff]'s anxiety and constitutes harassment under WAC 504-26-222." *Id.*

The Washington Administrative Code defines harassment as follows:

> Harassment is conduct by any means that is severe, persistent, or pervasive, and is of such a nature that it would cause a reasonable person in the victim's position substantial emotional distress and undermine his or her ability to work, study, or participate in his or her regular life activities or participate in the activities of the university, and/or actually does cause the victim substantial emotional distress and undermines the victim's ability to work, study, or participate in the victim's regular life activities or participate in the activities of the university.

Wash. Admin. Code § 504-26-222.

As an initial matter, Plaintiff fails to explain why Washington Administrative

ORDER GRANTING PRELIMINARY INJUNCTION – 17

Code § 504-26-222, which sets standards for prohibited conduct for *students*, is applicable to the University itself. *See* ECF No. 6 at 8–9. Plaintiff also provides no evidence as to the number, duration, or contents of the emails that would allow the Court to evaluate whether the email met this standard. *See id.* Plaintiff's declaration mentions only one specific email. *See* ECF No. 7-1 at 12 ("As I am writing this declaration with my attorney, I am being contacted by Defendant via email with a requirement to complete a survey about my experience as a student at the school. I am very upset because we began to ask them to stop contacting me in August of 2019, and it's still happening."). Plaintiff also provides no explanation for how these emails are "of such a nature that it would cause a reasonable person in the victim's position substantial emotional distress and undermine his or her ability to work, study, or participate in his or her regular life activities or participate in the activities of the university," nor that the emails actually caused such distress. *See* ECF No. 6 at 8–9. As such, she has not shown serious questions going to the merits of this claim.

### iv.    Gender discrimination

Plaintiff raises two main arguments for gender discrimination: (1) Defendant's decision to reprimand her, but not AF for "identical conduct" in using Slack and (2) Defendant's failure to act when Plaintiff informed staff members of AF's allegedly abusive and illegal conduct. ECF No. 6 at 9–10.

Damages are available under Title IX, 20 U.S.C. § 1681, only if "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 290 (1998). Washington statute, recognizing that Article XXXI, § 1, Amendment 61 of the Washington state Constitution requires equal treatment of all citizens regardless of gender, specifically prohibits "discrimination on the basis of gender against any student in the institutions of higher education." Wash Rev. Code § 28B.110.010.

Plaintiff alleges she and AF engaged in "identical" conduct, but that she was sanctioned and AF was not. ECF No. 6 at 9. However, Plaintiff has provided no factual support for her allegations that her conduct and AF's conduct was identical. *See* ECF Nos. 7-1, 16-1. As such, Plaintiff has not met her burden of showing substantial questions going to the merits of this claim.

Finally, Plaintiff argues that when she informed staff that she was being cyberstalked by AF and that she was once recorded without her consent, they initially did nothing and later told her she could report the behavior to a University Conduct Officer. ECF No. 6 at 9. Plaintiff's arguments do not specify exactly what she communicated to Defendant or when this communication occurred. *See id.* Plaintiff's supplemental declaration says she spoke with Burch-Windrem by phone

on October 13, 2018 and that Plaintiff "informed her at that time that [Plaintiff] was a victim of Domestic Violence at the hands of AF," specifically that "AF threw a coffee table at [Plaintiff]." ECF No. 16-1 at 5. Burch-Windrem's declaration characterizes this communication differently. ECF No. 11 at 6 (declaring that Plaintiff first raised AF's abusive conduct at a November 29, 2018 in-person meeting where she described AF as "aggressive and angry toward her during their breakup" and said he once overturned a coffee table). Because Plaintiff has failed to explain how these allegations would support a violation of Title IX, the Washington state constitution, or Wash. Rev. Code § 28B.110.010, she has not met her burden of showing serious questions going to the merits of these claims.

> ### v.    Disability rights violations

Plaintiff next argues Defendants failed to provide Plaintiff with core services she was entitled to as a disabled student. ECF No. 6 at 10. Wash. Rev. Code § 28B.10.912 sets forth certain "core services" that should be provided as appropriate to students with disabilities, including flexibility in testing arrangements, referral to the appropriate entity for diagnostic assessment and documentation of the student's disability, and flexibility in timelines for completion of courses, certification, and degree requirements. Wash. Rev. Code §§ 28B.10.912(12), (13) & (14).

Plaintiff asserts she was denied each of these resources. ECF No. 6 at 10.

Plaintiff's sworn declaration indicates that she informed Burch-Windrem of her anxiety and depression in a conversation shortly after October 13, 2018. *See* ECF No. 16-1 at 8; ECF No. 11 at 3. Plaintiff also separately indicates that "Daniel Teraguchi either knew or should have known that [she] had the documented disability of anxiety with the school, and that I had documented it." ECF No. 7-1 at 6. Plaintiff has also indicated that after she failed an exam on April 22, 2019, she was not given the opportunity to remediate the failure. ECF No. 7-1 at 6. Although these assertions are generally vague as to how Plaintiff raised and documented her disabilities, there is sufficient information to raise serious questions as to whether Plaintiff's conversation with Burch-Windrem was sufficient to trigger Defendant's responsibilities to provide core services under Revised Code of Washington § 28B.10.912. Thus, Plaintiff has shown serious questions going to the merits of her claims for disability rights violations.

### vi.    Outrage

Finally, Plaintiff argues the "totality of Defendant's conduct over the past year and a half towards Doe has been extreme and outrageous and has caused Doe severe emotional distress." ECF No. 6 at 11. "The tort of outrage requires the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003). "[A]ny claim for

intentional infliction of emotional distress must be predicated on behavior 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Kloepfel*, 66 P.3d at 632 (quoting *Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975)) (emphasis omitted). "In an outrage claim, 'the relationship between the parties is a significant factor in determining whether liability should be imposed.'" *Robel*, 59 P.3d at 620 (quoting *Contreras v. Crown Zellerbach Corp.*, 565 P.2d 1173, 1176 (Wash. 1977)).

Although Plaintiff's relationship with Defendant increases her likelihood of success on the merits, she has not pointed to any conduct that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Kloepfel*, 66 P.3d at 632. Nor has provided any evidence that she actually suffered severe emotional harm as a result of Defendant's actions. *See id.* Thus, Plaintiff has not shown serious questions going to the merits of her outrage claim.

### 3.   Plaintiff has shown a likelihood of irreparable injury

Plaintiff has established that irreparable harm is likely if preliminary relief is denied. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal.*, 757 F.3d at 1068 (citing *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental*,

*Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)). Plaintiff argues that if she is administratively withdrawn from the university, she would be effectively barred from pursuing a career as a medical doctor because no other medical school would accept her. ECF No. 6 at 11–12. She also elaborated at the hearing that if she were ultimately successful on the merits of her suit and re-enrolled in Defendant's medical school, she would suffer when applying to residencies because of the academic withdrawal that would remain noted on her record. Defendant's response is that if Plaintiff is withdrawn, it will be due to her own failure to abide by the conditions of return. ECF No. 10 at 9.

However, Plaintiff submitted two sworn declaration regarding her efforts to comply with the conditions of return. ECF No. 7-1 at 8. She explains that she has "made numerous attempts to contact a psychiatrist for a letter to meet the final qualification set out by SEPAC, and ha[s] regularly been denied, as what SEPAC is requesting is not standard practice for any doctor [Plaintiff] ha[s] been able to locate."[3] *Id.* As such, Plaintiff has presented evidence that despite her diligence in attempting to meet the requirements to re-enroll, she will be unable to meet those

---

[3] Plaintiff's first declaration seems to reflect a misunderstanding of the requirement that she produce a letter from psychiatrist stating that Plaintiff is fit to practice, rather than merely not a danger to herself or others. ECF No. 7-1 at 8. However, Plaintiff's supplemental declaration reflects that she has been seeking a "fitness to practice letter" and the Court therefore understands she has been seeking the appropriate documentation. ECF No. 16-1 at 13.

ORDER GRANTING PRELIMINARY INJUNCTION – 23

requirements. The Court therefore cannot find, at this time, that Plaintiff's withdrawal would a self-inflicted injury.

Moreover, the potential impact on her career Plaintiff describes is not subject to remedy by an award of damages. Rather, the limitation on her professional opportunities, particularly at such an early stage in her career, constitutes irrevocable harm. *See Enyart v. Nat'l Conference of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011) (finding the plaintiff "demonstrated irreparable harm in the form of the loss of opportunity to pursue her chosen profession"); *see also Ariz. Dream Act Coal.*, 757 F.3d at 1068 (finding setbacks in pursuing chosen profession early in their careers "likely to haunt Plaintiff for the rest of their lives"). Plaintiff has thus clearly shown that it is likely she will suffer irreparable harm if the injunction is not granted.

### 4.    The injunction is in the public interest

Based on the narrow terms of the injunctive relief Plaintiff is requesting, she has shown that the public interest supports injunctive relief. To assess the public interest, the Court looks to the "impact on non-parties rather than parties." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002). Plaintiff argues that because Defendant's actions are unlawful, there is no public interest in perpetuating their action. ECF No. 6 at 12. Defendant argues that there is a public interest in the medical school following its own policies in a consistent

ORDER GRANTING PRELIMINARY INJUNCTION – 24

manner for all students and that the professionalism policies Plaintiff allegedly violated are designed to protect the public. ECF No. 10 at 9.

As set out above, the Court finds the narrow injunctive relief Plaintiff seeks does not require Defendant university to alter its policies, nor does it require Defendant to waive or alter its professionalism requirements. If Plaintiff is ultimately unsuccessful on the merits of her claims, the six-year completion requirement and professionalism standards will be applied to her. The public has an interest in the preventing violations of constitutional rights, including due process rights, and in individuals being free from discrimination. *See Brewer*, 757 F.3d at 1069 ("[T]he public interest and the balance of the equities favor 'prevent[ing] the violation of a party's constitutional rights." (citing *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (alteration in original)). Thus, the public interest supports this narrow injunction that stays the harmful effects of alleged constitutional violations until the merits of those allegations are resolved.

**D.    The surety bond should be waived**

Plaintiff has shown the surety bond should be waived. Plaintiff seeks waiver of the surety bond, arguing that there is no likelihood that the injunction will harm Defendant. ECF No. 6 at 13. Defendant did not address this argument in the briefing or during oral argument. *See* ECF No. 10.

Federal Rule of Civil Procedure 65(c) permits the Court to "issue a

ORDER GRANTING PRELIMINARY INJUNCTION – 25

preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). This Rule "invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)) (emphasis in original). The Court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.*

The prohibition on Defendant academically withdrawing Plaintiff does not present any realistic likelihood of harm to Defendant. The Court has determined that Defendant will be able to consistently apply its policies, merely at a later time and subject to the outcome of Plaintiff's claims on the merits. Thus, there is no harm to Defendant that could result from a temporary prohibition on academically withdrawing Plaintiff pending the resolution of this action.

## CONCLUSION

For the foregoing reasons, the Court finds Plaintiff has shown she is entitled to a preliminary injunction. Until the merits of the litigation are resolved or the injunction is dissolved, Defendant shall not academically withdraw Plaintiff from the medical school or the university. Plaintiff shall remain on personal leave unless

the parties agree to a more appropriate status.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendant's Motion to Extend Deadline to File Response, **ECF No. 17**, is **GRANTED**.

    *A.*    The Court has considered Defendant's late-filed Response, ECF No. 10, in determining Plaintiff's Motion for Preliminary Injunction, ECF No. 6, and Amended Motion for Preliminary Injunction, ECF No. 7.

2.    Plaintiff Jane Doe's Motion for Preliminary Injunction, **ECF No. 6**, and Amended Motion for Preliminary Injunction, **ECF No. 7**, are **GRANTED**.

3.    Until the litigation is resolved or the preliminary injunction is dissolved, Defendant Elson S. Floyd College of Medicine at Washington State University is **ENJOINED** from academically withdrawing Plaintiff from the medical school or university.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 17th day of July 2020.

        SALVADOR MENDOZA, JR.
        United States District Judge

ORDER GRANTING PRELIMINARY INJUNCTION – 27