FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 17, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JANE DOE,<br><br>                  Plaintiff,<br><br>     v.<br><br>ELSON S FLOYD COLLEGE OF MEDICINE AT WASHINGTON STATE UNIVERSITY,<br><br>                  Defendant. | No.   2:20-cv-00145-SMJ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S PARTIAL MOTION TO DISMISS** |

Before the Court is Defendant's First Motion for Judgment on the Pleadings, ECF No. 31, Defendant's Second Motion for Judgment on the Pleadings, ECF No. 41, and Plaintiff's Opposed Partial Motion to Dismiss Without Prejudice, ECF No. 74. Defendant seeks dismissal of Causes of Action One through Six, Eleven, and Thirteen through Twenty *with* prejudice. ECF Nos. 31, 41. Plaintiff asks this Court to dismiss Causes of Action Ten through Thirteen and Fifteen through Twenty *without* prejudice. ECF No. 74.

Plaintiff initially sued Defendant in the Spokane County Superior Court, alleging twenty causes of action, including six due process violations, two violations of her right to privacy, harassment, seven gender discrimination claims,

three disability-rights violations, and the tort of outrage. ECF No. 2-2. Defendant afterward removed the suit to federal court. ECF No. 2. This Court dismissed Causes of Action Seven through Nine in a previous Order. ECF No. 51. The Court is fully informed and grants in part and denies in part each pending motion.

## PLAINTIFF'S ALLEGATIONS

Plaintiff enrolled in Defendant's medical school in August 2017. ECF No. 2-2 at 3. During her studies, she began dating a fellow student, and the relationship ended when it became abusive. *Id.* at 4. After the relationship ended, her former partner became romantically involved with another student, one of Plaintiff's close friends. *Id.* But when her former partner began dating her friend, she "confronted him about his indiscretions," and he "screamed, swore, and flipped a coffee table at her." *Id.* She informed Washington State University (WSU) staff of the abuse, but it did not take her concerns seriously. *Id.*

Separately, Plaintiff suffers from depression and PTSD, diagnoses which relate to "an incredibly traumatic event" she witnessed while in Kenya on an academic research trip. *Id.* She informed Assistant Director Lisa Burch-Windrem, Defendant's employee, of her disabilities at the beginning of her 2018 academic year. *Id.* She later informed Burch-Windrem of AF's abusive behavior; Burch-Windrem did not provide her with any resources for abuse victims nor any safety plan. *Id.* at 5.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S PARTIAL MOTION TO DISMISS – 2

During this time, her former partner and his new girlfriend began fabricating allegations against Plaintiff, and these allegations were taken seriously despite Plaintiff having previously reported her former partner's abuse. *Id.* Her former partner reported Plaintiff for harassing him over Defendant's messaging platform, Slack, conduct which Plaintiff represents was her attempt to ask him to leave her alone. *Id.* After her former partner reported this communication, WSU sanctioned her for a lack of professionalism, but provided her no explanation, guidelines, or definition of professionalism. *Id.* at 7.

Plaintiff raised concerns with Burch-Windrem and Dr. Dawn DeWitt that her former partner had recruited students to follow her and report back to him, but that they dismissed her allegations without investigation. *Id.* at 8. WSU sanctioned her for violating a no-contact order, yet she had never signed a no-contact order, and WSU refused to assign her to a new "small group" when she had been placed in a small group that included her former partner's new girlfriend. *Id.* at 9. At one point, Plaintiff contacted her former partner to ask him not to attend a student-planned ski trip and he recorded the conversation without her consent. *Id.* at 11. Plaintiff reported the unlawful recording to Student Affairs, though no action was taken. *Id.*

Plaintiff was not provided with sufficient evidence to defend herself against allegations brought against her by her former partner's new girlfriend. *Id.* at 13.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S PARTIAL MOTION TO DISMISS – 3

Three of the five voting members of SEPAC[1] should have recused themselves because they, respectively, (1) supervised her former partner's new girlfriend's cohort, (2) served as a leader for the Art and Practice of Medicine small group in which her former partner was a member, and (3) served as the faculty leader for a student organization for which her former partner and his new girlfriend were founding members and accompanied the two on a WSU-endorsed conference trip. *Id.* at 14. A fourth, non-voting SEPAC member served improperly as a both an advocate for Plaintiff and a non-voting SEPAC member. *Id.* at 16.

The appeals process from the SEPAC sanctions took four months and was highly stressful, causing her to fail two exams. *Id.* at 17. Professors did not give her the chance to remediate the exams she failed, in spite of WSU policy. *Id.* Defendant's Office of Student Affairs, one hour before her exam, sent her an email about a required meeting later that day intentionally, so that she would become too anxious to pass the examination. *Id.* at 18.

Plaintiff and her counsel asked the WSU to stop sending her emails, but Defendant continued to send her emails about courses and other matters. *Id.* at 19. Finally, after she filed a tort claim with Defendant's office of risk management,

---

[1] Plaintiff does not define "SEPAC" in her Complaint. *See* ECF No. 2-2. But Defendant notes in the First Motion for Judgment on the Pleadings that the acronym stands for the "Student Evaluation, Promotion and Awards Committee" of the medical school. ECF No. 31 at 11.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S PARTIAL MOTION TO DISMISS – 4

1    Burch-Windrem removed her from a group within Slack (a "Slack channel") in a

2    way that notified other students of her removal. *Id.* at 20.

3                                **LEGAL STANDARD**

4    **A.    Motions for Judgment on the Pleadings**

5            Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a

6    "short and plain statement of the claim showing that the pleader is entitled to relief."

7    The complaint need not provide "detailed factual allegations," but it "requires more

8    than labels and conclusions, and a formulaic recitation of the elements of a cause of

9    action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs

10   must plead enough facts "to 'state a claim to relief that is plausible on its face.'"

11   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

12   Though *Iqbal* announced the standard governing a Rule 12(b)(6) motion, the Ninth

13   Circuit has "said that Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and that

14   'the same standard of review' applies to motions brought under either rule." *U.S. ex*

15   *rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir.

16   2011).

17           "A claim has facial plausibility when the plaintiff pleads factual content that

18   allows the court to draw the reasonable inference that the defendant is liable for the

19   misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin

20   to a 'probability requirement,' but it asks for more than a sheer possibility that a

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTIONS FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S
PARTIAL MOTION TO DISMISS – 5

1   defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

2   "[W]hether a complaint states a plausible claim for relief . . . [is] a context-specific

3   task that requires the reviewing court to draw on its judicial experience and common

4   sense." *Id*. District courts must accept as true all factual allegations in the complaint

5   and construe the complaint, and resolve all doubts, in the light most favorable to the

6   plaintiff. *See id*.; *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th

7   Cir. 1988).

8   **B.    Motions for Voluntary Dismissal**

9        Under Federal Rule of Civil Procedure 41(a)(2), after a defendant has filed a

10  responsive pleading, a plaintiff may request that a court dismiss an action "on terms

11  that the court considers proper." Unless the order states otherwise, a dismissal under

12  Rule 41(a)(2) is without prejudice.

13                          **DISCUSSION**

14  **A.    Private Rights of Action**

15       Defendant's arguments for dismissing the state law causes of action largely

16  center on the assertion that Plaintiff has not alleged a basis for a private right of

17  action. *See generally* ECF Nos. 31, 41 (arguing the Court should dismiss Causes of

18  Action One through Six and Thirteen through Nineteen for this reason). In response,

19  Plaintiff states that she does not claim a private right of action is created by the

20  statues, regulations, and constitutional provisions themselves, and argues that the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTIONS FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S
PARTIAL MOTION TO DISMISS – 6

Washington Law Against Discrimination (WLAD), Wash. Rev. Code § 49.60.030, creates a private right of action. *See* ECF Nos. 53; 58. But Plaintiff only refers to WLAD in the "Jurisdiction and Venue" section and her Prayer for Relief. ECF No. 2-2 at 3, 34. Defendant argues that this does not give it adequate notice of the claims against it. ECF No. 67 at 2.

More importantly, the Washington Law Against Discrimination does not create private rights of action for each of the provisions under which Plaintiff brings her claims (i.e., WLAD does not create a private cause of action under the Washington State due process clause). Instead, WLAD creates a cause of action under the statute itself, pursuant to which Plaintiff can raise her claims.

Plaintiff also makes a breach of implied contract argument that she asserts should save her due process claims. ECF No. 58 at 3–7. It is unclear whether she is arguing that the Court should construe these Causes of Action as causes of action for breach of implied contract, or whether Defendant's alleged breach of any implied contract constitutes the property interest of which Plaintiff was deprived of without due process. In any event, Plaintiff does not mention an implied contract in her Complaint. *See* ECF No. 2-2.

Any implied contract does not create a due process private right of action. Washington State does not have an equivalent of 19 U.S.C. § 1983, so there is no private right of action for a state Due Process Clause claim. *See Sys. Amusement*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S PARTIAL MOTION TO DISMISS – 7

*Inc. v. State*, 500 P.2d 1253 (Wash. App. 1972) (corporations); *Spurrell v. Bloch*, 701 P.2d 529 (Wash. App. 1985) (individuals); *Brock v. Wash. State Dep't of Corr.*, No. C085167RBL, 2009 WL 3429096, at *9 (W.D. Wash. Oct. 20, 2009) ("Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations"); *Stearns-Groseclose v. Chelan Cnty. Sheriff's Dep't*, No. CV-04-0312-RHW, 2006 WL 195788, at *18 n.5 (E.D. Wash. Jan. 17, 2006).

The Court thus dismisses those state law claims for which there is no private right of action under the statute pursuant to which they are brought—Causes of Action One through Six and Thirteen through Nineteen. But the Court will allow Plaintiff to amend her Complaint to state causes of action under WLAD and implied breach of contract. Even though the deadline for amendment has passed, allowing Plaintiff to amend her complaint will not cause undue delay because it will not add new parties who would need to be served and file responsive pleadings nor will it substantially increase the amount of required discovery. *Cf.* ECF No. 51; *see also McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996) (affirming a dismissal with prejudice when Plaintiff failed to provide a "short and plain statement" in their third amended complaint but acknowledging that dismissal with prejudice "is a harsh remedy," so the court should consider "less drastic alternatives").

//

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S PARTIAL MOTION TO DISMISS – 8

**B.    Remaining Causes of Action**

The Court dismisses Cause of Action Ten without prejudice because this is uncontested by the parties. ECF No. 76 at 2. The Court also dismisses Causes of Action Eleven and Twenty without prejudice because it is not clear that Plaintiff could not remedy any deficiencies through amendment.

### 1.    Cause of Action Eleven

Defendant argues that Plaintiffs cause of action alleging violation of Title IX based on peer-on-peer harassment fails because Plaintiff affirmatively pleaded that she herself chose not to proceed with an investigation or notify student conduct officers. ECF No. 31 at 15–16.

Title IX protects from sex discrimination individuals in programs that receive federal funding. 20 U.S.C. § 1681(a). Although there is a private right of action, *Cannon v. Univ. of Chi.*, 441 U.S. 677, 709 (1979), damages are only available in certain situations, such as if an institution's "official policy" discriminates on the basis of sex, or if "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

A student-on-student harassment claim requires Plaintiff to establish, as a threshold matter, that Defendant received Federal financial assistance and that

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S PARTIAL MOTION TO DISMISS – 9

Plaintiff experienced sex-based discrimination. *Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093, 1105 n.1 (9th Cir. 2020). After that, Plaintiff must establish five elements:

> [1] the school must have exercised substantial control over both the harasser and the context in which the known harassment occurred.
> [2] the plaintiff must have suffered harassment that is so severe, pervasive, and objectively offensive that it can be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school.
> [3] a school official with authority to address the alleged discrimination and to institute corrective measures on the school's behalf must have had actual knowledge of the harassment.
> [4] the school must have acted with deliberate indifference to the harassment, such that the school's response to the harassment or lack thereof was clearly unreasonable in light of the known circumstances. This is a fairly high standard—a negligent, lazy, or careless response will not suffice. Instead, the plaintiff must demonstrate that the school's actions amounted to an official decision not to remedy the discrimination.
> [5] the school's deliberate indifference must have subjected the plaintiff to harassment. Put differently, the school must have caused the plaintiff to undergo harassment or made the plaintiff liable or vulnerable to it.

*Id.* at 1105 (internal citations and alterations omitted).

Defendant argues Plaintiff fails to state a claim as to the fourth element; that the school acted with deliberate indifference. ECF No. 31 at 17. Absent an unreasonable response, courts should not "second-guess" a school's decisions. *Davis*, 526 U.S. at 649. Defendant points to the fact that it provided her the option to "present her concerns to the Office of Equal Opportunity in Pullman," which

Plaintiff chose not to pursue. ECF No. 31 at 18 (citing ECF No. 2-2 at 15). And Defendant argues that Plaintiff does not assert that she reported her abuser's conduct to student conduct officers as she was told she could. ECF No. 2-2 at 11–12. As alleged, Defendant argues that it was not any failure, or "an official decision not to remedy the discrimination" by Defendant that prevented Plaintiff from relief from her harassment. *See Karasek*, 956 F.3d at 1105; *see also Gebser*, 524 U.S. at 290. Instead, it asserts it was Plaintiff's lack of exercise of her options that prevented the resolution—or at least, prevented Defendant the *opportunity* to reach a resolution.

On the other hand, Plaintiff argues that Defendant's response to her reporting the abuse "was a pointed attack." ECF No. 58 at 9. She argues that the "few measures [Defendant] did implement to protect Doe" were used "as a weapon against her in future disciplinary proceedings." *Id.* But Plaintiff does not support this assertion with any factual examples. *See id.* She is likely referring to the allegation in the Complaint that SEPAC later stated that she had violated a condition of her probation by contacting her abuser. ECF No. 2-2 at 12.

Plaintiff also argues that even though Defendant told her she could contact a student conduct officer, she was not told what that meant. *See* ECF No. 2-2 at 11–12. Defendant also allegedly did not tell her that she could contact law enforcement or that her abuser recording her was a crime. *See* ECF No. 2-2 at 8–9. Defendant

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S PARTIAL MOTION TO DISMISS – 11

allegedly refused to remove her from a school group of which her abuser's new girlfriend was also a member. ECF No. 2-2 at 9–10.

Finally, in her response, Plaintiff states that "[a]t no point in time has Plaintiff indicated that Defendant is responsible for peer-on-peer violations" rather, that "Defendant needs to be held liable for their gross mismanagement of a domestic violence situation." ECF No. 58 at 9. Defendant argues that that "mismanagement" is not a viable Title IX theory of liability, and that Plaintiff has effectively conceded this cause of action. ECF No. 70 at 9. It appears, though, that Plaintiff is merely trying to convey, rather clumsily, that she is not arguing that Defendant *caused* the abuse, rather that it knew about it and acted with deliberate indifference. *See Karasek*, 956 F.3d at 1105.

Altogether, Plaintiff has alleged no facts that show "deliberate indifference" to Plaintiff's abuse. Although Plaintiff may not be satisfied with the options provided by Defendant, it did give her some. The Court therefore dismisses this cause of action without prejudice.

## 2.    Cause of Action Twenty – Tort of Outrage

Plaintiff also alleges the common law tort of outrage. ECF No. 2-2 at 33– 34. Defendant argues that Plaintiff's allegations do not amount to "extreme and outrageous conduct beyond all bounds of human decency. ECF No. 41 at 16.

1  Moreover, "[a]t worst, [Plaintiff's allegations merely] reflect inaction, or that the

2  College simply did not believe her." *Id.*

3      The tort of outrage requires Plaintiff to show: (1) extreme and outrageous

4  conduct; (2) intentional or reckless infliction of emotional distress; and (3) that

5  Plaintiff actually suffered severe emotional distress as a result. *Kloepfel v. Bokor*,

6  66 P.3d 630, 632 (Wash. 2003). Juries generally decide whether conduct is

7  "extreme and outrageous," but courts act as gatekeepers. *Christian v. Tohmeh*, 366

8  P.3d 16, 30 (Wash. App. 2015), *review denied*, 377 P.3d 744 (Wash. 2016). "[M]ere

9  insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do

10 not suffice. *Kloepfel*, 66 P.3d at 632. Instead, the defendant's conduct must be "so

11 outrageous in character, so extreme in degree, as to go beyond all possible bounds

12 of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

13 community." *Id.* (emphasis omitted).

14     Courts have found that actions that are not public, egregious, or humiliating

15 is less likely to constitute outrageous conduct. *See, e.g.*, *Richards v. Healthcare Res.*

16 *Grp., Inc.*, 131 F. Supp 3d 1063, 1075 (E.D. Wash. 2015) (reasoning that conduct

17 was not extreme and outrageous where defendant allegedly forged plaintiff's initials

18 on a performance improvement plan and then used the plan as a basis to fire

19 plaintiff); *Dicomes v. State*, 782 P.2d 1002 (Wash. 1989) (determining privately

20 discharging plaintiff and *responding* to media inquiries about her discharge did not

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTIONS FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S
PARTIAL MOTION TO DISMISS – 13

constitute extreme and outrageous conduct). But courts have adopted factors to determine if conduct is sufficiently extreme and outrageous to result in liability include:

> (a) the position occupied by the defendant; (b) whether plaintiff was peculiarly susceptible to emotional distress and if defendant knew this fact; (c) whether defendant's conduct may have been privileged under the circumstances; (d) the degree of emotional distress cause by a party must be server as opposed to constituting mere annoyance, inconvenience or the embarrassment which normally occur in a confrontation of the parties; and, (e) the actor must be aware that there is a high probability that his conduct will cause severe emotional distress and he must proceed in a conscious disregard of it.

*Birklid v. The Boeing Co.*, 904 P.2d 278, 286 (Wash. 1995) (internal quotations omitted). Plaintiff argues that she was "peculiarly susceptible," and Defendant was aware of her particular sensitivity. ECF No. 53 at 7–9.

Defendants argue that Plaintiff alleges she was placed on leave only after professional conversations, investigations, letters, and appeals. ECF No. 41 at 18. Defendant first placed Plaintiff on probation and then administrative leave and heard "many" appeals. *Id.* It argues that does not rise to extreme and outrageous conduct as a matter of law. *Id.* Plaintiff responds that her disabilities—anxiety, depression, and PTSD—and her treatment for them were documented with Defendant when it took its actions. ECF No. 53 at 8–9; *see also* ECF No. 2-2 at 4–5. She had just left an abusive relationship and was forced to interact with her abuser and his new partner at school, which Defendant allegedly knew. *See* ECF No. 2-2

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S PARTIAL MOTION TO DISMISS – 14

at 4, 8–9. Plaintiff told several members of the college staff, including Burch-Windrem and Dr. Dewitt, "about how much of a struggle she was having maintaining her equilibrium." ECF No. 53 at 9; *see also* ECF No. 2-2 at 5, 8. Despite its awareness of Plaintiff's particular sensitivities, she argues, Defendant denied every request for help to lower this stress.

Unlike in *Richards* and *Dicomes*, Plaintiff has alleged a particular sensitivity based on her mental health diagnoses, as well as her experience in an abusive relationship. ECF No. 2-2. She alleges that Defendant was aware of these sensitivities. *Id.* Defendant allegedly denied Plaintiff's requests for relief and help. *Id.* Rather than inaction, those denials constitute affirmative actions that allegedly caused Plaintiff severe emotional distress. And unlike in *Richards* and *Dicomes*, which involved singular nefarious actions by employers, Defendant's alleged actions constituted an ongoing pattern of potentially distressing actions, such as the handling of the student conduct appeals process, refusing to remove Plaintiff from a group with her abuser's new girlfriend, and frequently contacting Plaintiff. *See* ECF No. 2-2. Finally, by publicly removing Plaintiff from the Slack channel could constitute a public, egregious, and humiliating action, making Defendant's conduct more outrageous than in *Richards*. *See* ECF No. 2-2 at 20–21.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S PARTIAL MOTION TO DISMISS – 15

While Plaintiff's Complaint does not currently state a claim for tort of outrage, an amendment might remedy that issue. So, the Court dismisses this cause of action without prejudice.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Defendant's First Motion for Judgment on the Pleadings, **ECF No. 31**, is **GRANTED IN PART AND DENIED IN PART**.

2.  Defendant's Second Motion for Judgment on the Pleadings, **ECF No. 41**, is **GRANTED IN PART AND DENIED IN PART**.

3.  Plaintiff's Opposed Partial Motion to Dismiss Without Prejudice, **ECF No. 74**, is **GRANTED IN PART AND DENIED IN PART**.

4.  Causes of Action One through Six and Thirteen through Nineteen are **DISMISSED WITH PREJUDICE**.

5.  Causes of Action Ten, Eleven, and Twenty are **DISMISSED WITHOUT PREJUDICE**.

6.  Plaintiff may amend her Complaint by **no later than March 19, 2021**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 17th day of February 2021.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S PARTIAL MOTION TO DISMISS – 16