Sarah L. Freedman
Freedman Law Office, P.S.
1312 N. Monroe, Ste 127
Spokane, WA 99201
(971) 998-8119

**THE HONORABLE MENDOZA, SALVADOR, JR.**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JANE DOE,

                Plaintiff,

vs.

ELSON S. FLOYD COLLEGE OF MEDICINE AT WASHINGTON STATE UNIVERSITY,
                Defendant.

CASE No.: 2:20-CV-00145-SMJ

PLAINTIFF'S MOTION TO PROCEED UNDER PSEUDONYM

I.  INTRODUCTION

The Plaintiff—filed initially in Superior Court as Jane Doe and not altered since removal—brings the following motion for a protective order protecting her

identity from disclosure. This motion is currently opposed, though this was not communicated to Plaintiff until the morning of filing and directly contradicts a previous stipulation in writing from the Defendant wherein it was explicitly indicated that any motions to proceed under pseudonym would not be opposed by the Defendant. This motion incorporates a proposed protection order protecting Jane Doe's name, birthdate, and any other obvious identifying information the Court deems appropriate. Of the proposed order, only the protection of Jane Doe's name is opposed by the Defendant.

## II. PROCEDURAL BACKGROUND

This case was initially filed in Spokane County Superior Court by the Plaintiff on January 31, 2020. Counsel for the Plaintiff at the time of filing inquired with Superior Court Staff as to filing under pseudonym and was informed to file first and bring a motion later. Prior to the opportunity to bring a motion in State Court, Defendant removed this case to Federal Court. At the time, Counsel for Plaintiff was not barred federally and was playing catchup. At the time that Plaintiff's counsel and Defendant's counsel agreed to the current protective order in place related to discovery, Doe proceeding under pseudonym was discussed. Counsel for the Defendant—at Ms. Doe's request—followed that conversation by placing the stipulation for Ms. Doe to proceed under pseudonym as discussed during that same conversation into writing. Plaintiff had been operating under the belief that this motion was thus unopposed from July 1, 2020 to approximately 9am on the morning of this writing—February 22, 2021—due to detrimentally relying upon a plain language reading of that email from AAG Ulrich that summarized that phone conversation on July 1, 2020 indicating Counsel for the

Defendant would "…not oppose any motion for [my] client to proceed under pseudonym," and further indicated that he "…[knew] her real name, and [was] not prejudiced by proceeding in pseudonym." *Exhibit A*. Counsel for the Plaintiff, a sole practitioner with no staff, has been attempting to mount this case singlehandedly against the attorney general's office and thus had not prioritized what had not been indicated by the Defendant to be anything other than an unopposed motion to proceed under pseudonym, focusing instead on ensuring that all of the discovery has been reviewed and preparing for the numerous depositions set by the Defendant. When the Court indicated the deadline for this motion, Counsel for the Plaintiff noted the deadline, reread the written stipulation from AAG Ulrich, and proceeded with review of discovery. Upon preparing this motion, Counsel for the Plaintiff realized that there were exhibits that would be relevant to the Plaintiff's argument and potentially helpful to the Court in making a determination as to this issue. Counsel for the Plaintiff contacted Counsel for the Defendant regarding a stipulation to file under seal pursuant to the protective order, and the emailed response was the first indication to Counsel for the Plaintiff that the Defendant had decided to oppose this motion for the purposes of trial. Furthermore, as the emails today have progressed, Counsel for the Defendant has vacillated between indicating that they "believe" this had previously been discussed but were unsure to indicating that their position has remained unchanged to indicating that their position has become "more detailed." *Exhibit B*. Counsel for the Plaintiff has been consistent in her reliance on the same email that indicated the same content since last July, and—as is indicated in the emails attached—would have expressed concerns about any changes to the stipulation in writing sooner had

they occurred previously, as the prejudice to Ms. Doe outlined below is of tremendous concern. It should also be noted that Counsel for the Defendant repeatedly mentioned the "current position" regarding stipulation; this implies that the position had changed, but counsel for the Plaintiff was never notified and continued to detrimentally rely on the initial stipulation. *id*.

### III. ARGUMENT

In order for a Plaintiff to proceed under pseudonym, they must be able to show that they can overcome the presumption against anonymity set forth in (case) by showing that their need for their identity to remain cloaked trumps the public right to knowledge by an analysis of the following three factors: "(1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation." *DOES I Thru XXIII v. Advanced Textile Corp., 214 F.3d 1058 (9th Cir. 1999.)* Additionally, "The court must also determine the precise prejudice at each stage of the proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice." *id.* In the case at bar, Plaintiff overcomes all three of these factors and—as is discussed in the next paragraph—there is no prejudice to the Defendant. The harm threatened to Ms. Doe is the possible ruination of her entire future; even if she is permitted to return to medical school, she still must be selected for a residency. As the facts alleged in the complaint deal with mental health issues, domestic violence, and Ms. Doe standing up to her educational institution for the rights of herself and future students, it is possible that should her name be identified publicly, any one of these claims could negatively impact her ability to match to a residency. The reasonableness of these fears is legitimate; unless a

residency program denies Ms. Doe—or any other student for that matter—due to her statutes as a member of a protected class and Ms. Doe can prove it, there will be no recourse for Ms. Doe to preserve her future career. Ms. Doe is already older than a traditional medical student—she was considered non-traditional due in part to her age when she entered ESFCOM—and her disabilities also add to her vulnerabilities. As it stands, Ms. Doe is raising claims in multiple areas that very reasonably could affect placements. This creates an additional level of vulnerability that warrants additional protections.

It should also be noted that in this particular case, AAG Ulrich initially indicated that he was "…not prejudiced by proceeding in pseudonym," though he has now indicated that he has concerns that his witnesses "…will likely be stumbling over their words trying to remember to refer to her as Doe, which could cause them to be perceived differently by the jury." *Exhibit B.* Expecting a witness to be careful while testifying is not prejudicial, especially when adequate time remains to prepare witnesses properly for trial. Furthermore, counsel's concerns do not make sense. The witnesses in this case are almost exclusively doctors or soon to be doctors, so they are familiar with having to be bound by privacy protections under HIIPA. Furthermore, a great many of the witnesses in this case are also educators, meaning they are doubly bound under FERPA. Additionally, the name "Jane Doe" has long been used as a placeholder name for unidentified females in the medical field, with a usage so established as to have been defined in medical dictionaries both as:

> "Ethics: The name assigned to a terminally ill 13-yr
> old girl with an irreversible neurologic disorder hospitalized at the Scottish

Rite Children's Medical Centerin Atlanta, whose treatment her doctors deemed futile

Forensics: A name which may be assigned to an unidentifed female admitted to hospital without Identification or an unidentified female decedent." [1]

The pseudonym John or Jane Doe is used globally[2] in the medical field. It is used often enough that there have been studies on the frequency of its use.[3] How to treat those with Doe designations is often a topic of ethical debate amongst the medical community,[4] and has even been featured on NPR.[5] Defendant's claim that using this commonplace term is going to somehow prejudice professionals who work in a field that uses the term at least as often as legal professionals do just does not make sense.

Beyond any standards set in case law or concerns relating to prejudice, there is significant public good that could come from Ms. Doe bringing this case before the Court. As Ms. Doe's claims include serious concerns relating to University's treatment of students and disparate applications of policies and procedures by those involved in the disciplinary processes. It has become abundantly apparent through the discovery process—and Ms. Doe anticipates will become even more clear through depositions over the next several weeks—that the University was aware

---

[1] Jane Doe." Segen's Medical Dictionary. 2011. Farlex, Inc. 22 Feb. 2021 https://medical-dictionary.thefreedictionary.com/Jane+Doe
[2] Cause Of Death in "John Doe & Jane Doe": A 5 Year Review Kumar A; - https://pubmed.ncbi.nlm.nih.gov/25302219/
[3] Leonard J Paulozzi, John and Jane Doe: the epidemiology of unidentified decedents Journal of forensic sciences, https://pubmed.ncbi.nlm.nih.gov/18489552/ (last visited Feb 22, 2021).
[4] Bonnie Steinbock, Baby Jane Doe in the Courts, 14 The Hastings Center Report 13 (1984), https://www.jstor.org/stable/3560843?read-now=1&seq=1#metadata_info_tab_contents.
[5] How Hospital Er Sleuths Race To Identify An Unconscious Or Dazed Jane Or John Doe Susan Abram - https://www.npr.org/sections/health-shots/2019/05/07/720702299/how-hospital-er-sleuths-race-to-identify-an-unconscious-or-dazed-jane-or-john-do

that they were not applying disciplinary policies and procedures to concerns relating to her as they were officially written. *Exhibit C-D*. Of even more concern, it is indicated repeatedly in writing that members of University staff are unclear about what the policies and procedures actually are. *Exhibit E.* In this regard, Ms. Doe is acting almost as a sort of quasi-whistleblower[6] to ensure that the University is being held accountable for their actions in regards to her claim so that these actions are not repeated in the future when dealing with other students. Traditional statutory whistleblower protections do not necessarily include proceeding through a case with anonymity, but granting this protection is not barred by statute either, and is ultimately in the best interest of the public when the Defendant is a public agency. By having the courage to confront her educational institution, Ms. Doe is not only attempting to ensure that she is treated fairly, but is hoping that the University will be held accountable so that this does not happen to another student. She knows realistically that she may not be able to return to school—as was referenced repeatedly in oral argument on Plaintiff's motion for a preliminary injunction, the Defendant has a policy requiring the program be completed within six years—but Ms. Doe is proceeding with this suit to ensure that no other student is treated the way she was. That kind of courage can come with the price of retaliation in the form of unforeseeable consequences when the opposing party is a public agency, and Ms. Doe is concerned about what her future may be.

---

[6] To be clear, Plaintiff is aware that she is not a whistleblower in the classic sense and is not arguing that she should be entitled to protections as such. Instead, the argument is that speaking out against bad action by public agency is in the best interest of the public, regardless of whether an individual's motives are entirely altruistic or if they are getting some portion of benefit for themselves and are also hoping to help others.

Ultimately, the Ninth Circuit has indicated that "in cases where the plaintiffs have demonstrated a need for anonymity, the district court should use its powers to manage pretrial proceedings…and to issue protective orders limiting disclosure of the party's name…to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case." Advanced Textile Corp at 1058. In this case, there is no prejudice that can be claimed by the Defendant in limiting the Plaintiff's name, whereas there is a real and serious threat of harm to the specifically vulnerable Plaintiff should she be exposed.

## IV.  CONCLUSION

The Plaintiff is in an unenviable position. She is raising serious concerns relating to how a public university—and thus a state agency—is operating and treating students. She is raising concerns related to domestic violence and mental illness, both of which make her particularly vulnerable. She knows that doing so is opening her up to the possibility of being rejected by residencies, a very legitimate fear shared by all medical students, but particularly any who are non-traditional in any way. And yet, even knowing that there is a real possibility that she will not be permitted to return to her educational environment at the end of all of this, she is persisting with the suit in pursuit of justice for herself and in a brave attempt to try to make substantial changes for the betterment of others. These actions tilt the balance not only of the factors set out in (case?) in Plaintiff's favor, but show that the cost to the public in providing Ms. Doe anonymity is being offset substantially by the public good she is actively engaging in. Lastly, there is no actual prejudice to the Defendant in permitting Ms. Doe to proceed in pseudonym through trial at this juncture, just as there was no actual prejudice to the Defendant when they

stipulated in writing that they would not oppose any motions filed by Ms. Doe to proceed in pseudonym.

DATED this __22__ day of February 2021.


/S/ Sarah L. Freedman_____

Sarah L. Freedman, WSBA #51111

Attorney for Plaintiff

## V.  PROPOSED ORDER

The Plaintiff proposes the following protective order:

Unless otherwise ordered or authorized by the Court, any and all references in pleadings and proceedings to the Plaintiff in this action shall under the pseudonym "Jane Doe." Any materials or documents presented at trial to the jury will be redacted to ensure that the pseudonym is protected. Any references to the Plaintiff's date of birth, student ID number, or similarly identifying information shall be similarly redacted. Likewise, any and all testimony elicited from witnesses will utilize "Jane Doe" as the name of the Plaintiff in this action.

I hereby certify that on February 22, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following, and/or I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant(s):
Nicholas Ulrich, Assistant Attorney General
Katie Merrill, Assistant Attorney General.

                                          s/Sarah L. Freedman
                                          SARAH L. FREEDMAN
                                          Attorney for Plaintiff